IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Brian Towne | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Karen Donnelly, George Mueller, Brian Vescogni, Matthew Kidder, David Gualandri, City of Ottawa, and County of LaSalle, | ) ) ) Jury Trial Demanded |
| | ) |
| Defendants. | ) |
| AND | ) |
| | ) |
| Jeremiah Adams, Scott Cruz, and Randy Baxter, | ) ) |
| | ) |
| Respondents-in-discovery. | ) |

## COMPLAINT

Plaintiff Brian Towne, through his attorneys Hale & Monico, complains of Defendants Karen Donnelly, George Mueller, Brian Vescogni, Matthew Kidder, and David Cualandri, City of Ottawa, and the County of LaSalle and identifies Jeremiah Adams, Scott Cruz, and Randy Baxter as respondents-in-discovery pursuant to 735 ILCS 5/2-402, and states as follows:

### Introduction

1. Plaintiff Brian Towne is the former State's Attorney for LaSalle County, Illinois. In November 2016, Plaintiff lost a hotly contested election against Defendant Karren Donnelly, who was subsequently sworn in as LaSalle County State's Attorney.

1

2. Defendant Donnelly, not satisfied with prevailing at the ballot, initiated an investigation into her election opponent, Plaintiff. Defendant Donnelly's motivation was entirely a personal and political one and was both an abuse of her office and a betrayal of the trust of the citizens of LaSalle County who voted for her in the election.

3. Defendant Donnelly enlisted into her scheme several of her subordinates in the State's Attorney's Office, two officers with the Ottawa Police Department, and a retired police officer to assist her. Far from dissuading Defendant Donnelly from pursuing this political vendetta, these seven individuals assisted Defendant Donnelly in obtaining criminal indictments against Plaintiff that were not supported by facts or the law.

4. Plaintiff spent nearly two years fighting the criminal prosecution. On August 2, 2019, all of the criminal charges against Plaintiff were dismissed.

5. Plaintiff Brian Towne brings this lawsuit not only to seek redress for the violations of his rights but also to bring to light Karen Donnelly's violation of the public trust and the abuse of the powers of her office in retaliating against political opponents.

## Parties

6. Plaintiff Brian Towne is the former LaSalle County State's Attorney and a resident of LaSalle County, Illinois.

7. Defendant Karen Donnelly is the current LaSalle County State's Attorney and a resident of LaSalle County, Illinois. During the relevant time, Defendant Donnelly

acted within the scope of her employment and under color of law. Defendant Donnelly is sued in her individual capacity.

8. Defendant George Mueller was, during the relevant time, an Assistant State's Attorney with the LaSalle County State's Attorney's Office and acted within the scope of his employment and under color of law. Defendant Mueller is sued in his individual capacity.

9. Defendant Brian Vescogni was, during the relevant time, an Assistant State's Attorney with the LaSalle County State's Attorney's Office and acted within the scope of his employment and under color of law. Defendant Vescogni is sued in his individual capacity.

10. Defendant Matthew Kidder was, during the relevant time, an Assistant State's Attorney with the LaSalle County State's Attorney's Office and acted within the scope of his employment and under color of law. Defendant Kidder is sued in his individual capacity.

11. Defendant David Gualandri was, during the relevant time, a law enforcement officer employed by the Police Department of the City of Ottawa. He acted under color of law and within the scope of his employment. Defendant Gualandri is sued in his individual capacity.

12. Jeremiah Adams is named as a Respondent-in-Discovery pursuant to 735 ILCS 5/2-402. During the relevant time, Adams was employed as an Assistant State's Attorney with the LaSalle County State's Attorney's Office and acted within the scope of his employment and under color of law.

13. Scott Cruz is named as a Respondent-in-Discovery pursuant to 735 ILCS 5/2-402. During the relevant time, Cruz was employed as a law enforcement officer with the Police Department of the City of Ottawa and acted within the scope of his employment and under color of law.

14. Randy Baxter is named as a Respondent-in-Discovery pursuant to 735 ILCS 5/2-402. During the relevant time, Baxter – a retired police officer – was employed by either the City of Ottawa or LaSalle County as an investigator to assist in the investigation into Plaintiff Brian Towne and acted within the scope of his employment in that role. In that role, Baxter acted under color of law.

15. City of Ottawa, Illinois is a municipal corporation organized and doing business under the laws of the State of Illinois. During the relevant time, City of Ottawa employed Defendant Gualandri and Cruz as law enforcement officers with the Ottawa Police Department. Respondent-in-discovery Baxter may have been employed by this municipal corporation and did act within the scope of his employment during the relevant time.

16. County of LaSalle is a municipal corporation organized and doing business under the laws of the State of Illinois. During the relevant time, County of LaSalle employed Defendants Mueller, Vescogni, and Kidder and Jeremiah Adams as assistant state's attorneys. Respondent-in-discovery Baxter may have been employed by this municipal corporation and did act within the scope of his employment during the relevant time.

## Jurisdiction and Venue

17. This action arises under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988, and under the laws of the State of Illinois.

18. The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Sections 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

19. Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division, under Title 28 of the United States Code, Section 1391(b)(2), as the events complained of occurred within this district.

## Factual Allegations

20. In 1992, Plaintiff fulfilled a lifelong dream and was hired as an assistant state's attorney with the LaSalle State's Attorney's Office ("SAO").

21. In 2006, Plaintiff was appointed LaSalle County State's Attorney when Joseph Hettel was appointed as a circuit court judge.

22. Plaintiff was duly elected State's Attorney in his own right in 2008 and again in 2012 as a Democrat.

23. In 2012, Defendant Donnelly was a law clerk in the SAO.

24. In April 2012, Donnelly's son Cody was indicted by the LaSalle County State's Attorney's Office for criminal offenses.

25. While in her role as a law clerk, Defendant Donnelly made numerous attempts to improperly access the State's Attorney's file on the criminal prosecution of her son despite being repeatedly informed that she was not permitted to view the file due to the conflict.

26. Eventually, Plaintiff had to physically lock the file away to prevent Defendant Donnelly from accessing it.

27. Cody eventually entered a guilty plea to the criminal charges and was sentenced to four years in prison.

28. Based on her subsequent actions, it is apparent that Defendant Donnelly's personal grudge against Plaintiff started with the SAO's prosecution of Defendant's son.

29. Upon completion of law school, Defendant Donnelly applied for an entry-level position with the SAO. Due to a poor work ethic and personality disputes with members of his staff, Plaintiff did not hire Defendant Donnelly as an assistant state's attorney.

30. In the Fall of 2015, Defendant Donnelly announced her candidacy for State's Attorney as a Republican. Defendant Donnelly began making attacks on Plaintiff that went far beyond typical campaigning.

31. Defendant Donnelly was assisted in her campaign by Defendant Mueller (who was Donnelly's boss at the time) and a local attorney named Julie Ajster, whose fiancé had been criminally prosecuted by the SAO when Plaintiff was the LaSalle County State's Attorney.

32. Defendant Donnelly's campaign became nasty against Plaintiff. This included personal attacks against Plaintiff's character and allegations of criminal conduct.

33. In November 2016, Defendant Donnelly won the election for LaSalle County State's Attorney against Plaintiff. Defendant Donnelly was sworn in as State's Attorney on December 1, 2016.

34. On March 22, 2017, Defendants Donnelly, Mueller, Vescogni, and Kidder, as well as Jeremiah Adams, participated in a meeting with Defendant Gualandri. During this meeting, Defendant Donnelly stated she and her office (namely the aforementioned assistant state's attorneys) had been conducting an investigation into Plaintiff's conduct as State's Attorney and requested Defendant Gualandri continue the investigation.

35. Plaintiff and Defendant Gualandri had previously been in conflict over charging an individual for criminal acts. Plaintiff declined to charge the individual based on the evidence and Defendant Gualandri, who wanted the individual charged, subsequently supported Defendant Donnelly during the 2016 election.

36. It is well-established that the investigation of a former State's Attorney or Assistant State's Attorney by the office they were formerly part of is highly problematic and creates the appearance of bias.

37. As such, there are multiple options available to prevent such a conflict. The Office of the Attorney General and other State's Attorneys for other counties could have been requested by the LaSalle County SAO to investigate the claims against

7

Plaintiff. The LaSalle County SAO could also have asked a court to appoint a Special Prosecutor to investigate the claims against Plaintiff.

38. Defendant Donnelly chose to forego these options and instead chose to personally investigate Plaintiff with the assistance of Defendants Mueller, Vescogni, and Kidder and Jeremiah Adams.

39. Defendant Donnelly also chose to involve Defendant Gualandri – likely due to his prior conflict with Plaintiff and his support of Donnelly during the election – and two other individuals to investigate Plaintiff, rather than request the investigation be completed by a law enforcement agency with no prior connection to the former LaSalle County State's Attorney.

40. This investigation – and subsequent criminal prosecution – was wholly political and motivated by personal animosity towards Plaintiff.

41. Indeed, during a meeting, Defendant Mueller stated that all they needed was one shred of evidence against Plaintiff to pursue this political prosecution.

42. It is readily apparent that these prosecutors ignored their responsibility to seek justice and instead abused their authority to persecute Plaintiff. They expended and wasted time, energy, and taxpayer resources in pursuing this personal and political vendetta.

43. Defendant Gualandri, Cruz, and Baxter were willing participants in this fraud of an investigation. Upon information and belief, these three officers interviewed witnesses who made exculpatory and/or favorable statements about Plaintiff. Defendant Gualandri, Cruz, and Baxter did not document these statements and

concealed the fact that such interviews took place. This information was never disclosed to Plaintiff during his criminal prosecution.

44. Throughout the investigation, Defendants Donnelly, Mueller, and Kidder continued to be intimately involved. Upon information and belief, Donnelly transported a witness to be interviewed and sat in during her statement to the officers. Likewise, Defendant Kidder was present during one of the witness interviews that was concealed from Plaintiff.

45. Ultimately, Defendants' investigation did not reveal criminal acts by Plaintiff.

46. However, the facts were beside the point and, notwithstanding the lack of any probable cause or evidence of wrongdoing, Defendants chose to present the "case" to the Grand Jury.

47. In September 2017, Defendants Donnelly, Mueller, and Kidder presented "evidence" to the Grand Jury.

48. Defendants Donnelly, Mueller, Vescogni, and Kidder and R-I-D Adams were personally involved in the investigation prior to the presentment of the matter to the Grand Jury. As such, these prosecutors acted as investigators and not merely prosecutors and do not have any immunity from this suit.

49. Upon information and belief, Defendant Gualandri testified and made numerous false statements in an attempt to obtain an indictment, which was ultimately secured.

9

50.  In addition, upon information and belief, Defendants Donnelly, Mueller, and Kidder made misstatements to the Grand Jury in their attempt to obtain an indictment.

51.  The indictments obtained by Defendants were not supported by probable cause.

52.  The conduct by Defendants was not in the interests of justice. Rather, it was done to settle a political score against Plaintiff.

53.  Upon being informed of the indictments, Plaintiff surrendered himself. Plaintiff was subsequently placed on a $50,000 bond and his freedom of movement was limited due to the pending criminal charges.

54.  In October 2017, Defendants re-presented the "case" to the Grand Jury to secure amended indictments. As with those returned in September, these indictments were not supported by probable cause and based on false and misleading testimony.

55.  In the criminal proceeding, Plaintiff filed a motion for the appointment of a special prosecutor and the motion was granted on November 28, 2017.

56.  Greg McClintock was appointed Special Prosecutor on February 14, 2018.

57.  Defendants Donnelly and Mueller filed a notice of appeal of the court's decision to appoint a special prosecutor. Defendants Donnelly and Mueller had no legal basis to do so. Indeed, Defendants Donnelly and Mueller knew they had no basis for an appeal (which was premised on civil procedure despite this being a criminal prosecution) but proceeded with the appeal regardless. Upon information and belief, Defendant Mueller admitted to a third party that they knew they would lose the

appeal but would petition the Illinois Supreme Court for review because it was an "interesting" issue.

58. In December 2018, while Defendant Donnelly's frivolous appeal was pending, Plaintiff filed a speedy trial demand.

59. In March 2019, the appellate court denied Defendant Donnelly's appeal and found there was no jurisdiction for the appeal. Such a holding was not surprising as a second-year law student could see Defendant Donnelly's appeal was without merit.

60. In June 2019, the Illinois Supreme Court denied Defendant Donnelly's petition for leave to appeal.

61. On July 19, 2019, the trial court heard argument over Plaintiff's motion to dismiss on grounds that his right to a speedy trial was violated by Defendant Donnelly's frivolous appeal of the appointment of the special prosecutor as Plaintiff had not been brought to trial in a timely manner.

62. On August 2, 2019, the trial court granted Plaintiff's motion and all criminal charges against Plaintiff were dismissed.

63. On August 6, 2019, Defendant Donnelly filed a motion to be re-instated as prosecutor for the case; this motion had no legal merit.

64. Defendant Donnelly's motion was denied by the trial court and Defendant Donnelly made inflammatory statements to the media and accused the Special Prosecutor of having improper motives. On the contrary, Defendants were the ones with the improper motives and had stretched out this malicious prosecution for years.

65. For nearly two years, Brian Towne's life was hell. He faced criminal charges that were not supported by probable cause for the sole reason of having the audacity of running for elected office and opposing Karen Donnelly in an election. He had to retain attorneys to defend him in both the criminal prosecution and the appeals. And his reputation has been utterly destroyed due to the amount of press given to Defendants' political prosecution of him.

66. Defendants' conduct is something one would expect in a totalitarian government where political opponents are routinely persecuted and executed; it is not expected here.

67. Prosecutors are under an ethical obligation to use their authority to seek justice and not to settle personal or political scores. It is apparent that the Defendants violated that sacred oath.

68. The conduct of these Defendants in abusing their office and the public trust is appalling and shocks the conscience. Plaintiff brings this lawsuit not only to seek redress for the violation of his civil rights but to deter similar misconduct in the future.

<u>Claims</u>

Count I
42 U.S.C. § 1983
Violation of the First Amendment
**Defendants Donnelly, Mueller, Vescogni, Kidder, and Gualandri**

69. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

12

70. In running for LaSalle County State's Attorney, Plaintiff engaged in an activity protected by the First Amendment.

71. Defendants Donnelly, Mueller, Vescogni, Kidder, and Gualandri subjected Plaintiff to criminal prosecution for charges that were not supported by probable cause.

72. Plaintiff's criminal prosecution by these Defendants was motivated by Plaintiff's First Amendment activity, *i.e.* running for LaSalle County State's Attorney in the 2016 election.

73. The criminal prosecution of a political opponent is, without a doubt, likely to deter First Amendment activity.

74. Plaintiff was subjected to criminal prosecution on charges for which there were no probable cause.

75. Plaintiff's criminal prosecution was based on Plaintiff exercising his right to free speech, specifically Plaintiff's campaign for LaSalle County State's Attorney.

76. By subjecting Plaintiff to criminal prosecution for which there was no probable cause – which was motivated by Plaintiff's engaging in First Amendment activity – Donnelly, Mueller, Vescogni, Kidder, and Gualandri violated Plaintiff's rights under the First Amendment.

77. As a result of the violation of his First Amendment rights through this prosecution, Plaintiff was injured and suffered damages.

Wherefore, Plaintiff Brian Towne prays for judgment in his favor and against Defendants Donnelly, Mueller, Vescogni, Kidder, and Gualandri on this claim and for

an award of compensatory and punitive damages, attorneys' fees, costs, and any additional relief that is just and appropriate.

## Count II
## 42 U.S.C. § 1983
## Violation of the Fourth Amendment
## Defendants Donnelly, Mueller, Vescogni, Kidder, and Gualandri

78. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

79. Defendants Donnelly, Mueller, Vescogni, Kidder, and Gualandri secured numerous criminal indictments against Plaintiff that were not supported by probable cause. This was done by presenting false and misleading information the Grand Jury.

80. Plaintiff was detained pursuant to those indictment. Plaintiff was ultimately released on bond but was subjected to conditions that restricted his liberty in a way that would not have existed absent the criminal indictments secured by Defendants Donnelly, Mueller, Vescogni, Kidder, and Gualandri.

81. Plaintiff was not released from this bond until his charges were dismissed.

82. By subjecting Plaintiff to criminal prosecution for which there was no probable cause, Defendants Donnelly, Mueller, Vescogni, Kidder, and Gualandri violated Plaintiff's rights under the Fourth Amendment.

83. As a result of the violation of his Fourth Amendment rights, Plaintiff was injured.

Wherefore, Plaintiff Brian Towne prays for judgment in his favor and against Defendants Donnelly, Mueller, Vescogni, Kidder, and Gualandri on this claim and for

an award of compensatory and punitive damages, attorneys' fees, costs, and any additional relief that is just and appropriate.

## Count III
## Illinois law
## Malicious Prosecution
## Defendants Donnelly, County of LaSalle, and City of Ottawa

84. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

85. Plaintiff was subjected to criminal prosecution based on charges that were not supported by probable cause.

86. This criminal prosecution was initiated and continued by Defendant Karen Donnelly, assistant state's attorneys employed by the County of LaSalle, and law enforcement officers employed by the City of Ottawa. In addition, R-I-D Baxter was employed by one of the municipalities and acted within the scope of his employment.

87. Defendant Donnelly and the County and City employees acted with malice. Defendant Donnelly, in particular, acted due to her personal animosity towards Plaintiff based on his prior criminal prosecution of Cody Donnelly, his decision not to hire Defendant as an entry level assistant state's attorney, and his opposition to Defendant in the 2016 election.

88. The charges were dismissed in Plaintiff's favor.

89. The County and City employees acted within the scope of their employment during the relevant time. As a result, the County of LaSalle and the City of Ottawa are liable under the legal theory of *Respondeat Superior*.

90. Plaintiff suffered damages as a result of being subjected to criminal prosecution to charges for which there were no probable cause.

Wherefore, Plaintiff Brian Towne prays for judgment in his favor and against Defendants Donnelly, the County of LaSalle, and the City of Ottawa on this claim and for an award of compensatory and punitive damages, costs, and any additional relief that is just and appropriate.

### Count IV
### Illinois law
### Intentional Infliction of Emotional Distress
### Defendants Donnelly, County of LaSalle, and City of Ottawa

91. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

92. Plaintiff was subjected to criminal prosecution based on charges that were not supported by probable cause. This prosecution was due to Plaintiff having opposed Defendant Karen Donnelly in the 2016 election for LaSalle County State's Attorney.

93. This criminal prosecution was initiated and continued by Defendant Karen Donnelly, assistant state's attorneys employed by the County of LaSalle, and law enforcement officers employed by the City of Ottawa.

94. The criminal prosecution, media statements, and overall conduct of Defendant Donnelly, the County employees, and the City employees were done with an intention to cause emotional distress to Plaintiff.

95. The conduct of these Defendants exceeded the bounds of civilized society and was extreme and outrageous. These Defendants abused their offices and violated the

public's trust by commencing and continuing a criminal prosecution that was not based on probable cause but was motivated by personal and political animus.

96. The County and City employees acted within the scope of their employment during the relevant time. As a result, the County of LaSalle and the City of Ottawa are liable under the legal theory of *Respondeat Superior*.

97. Plaintiff suffered emotional distress from the ongoing criminal prosecution, which did not end until the charges were dismissed in August 2019.

98. Plaintiff continues to suffer harm to his emotional well-being and reputation to this day due to the media attention surrounding the misconduct taken by Defendants in subjecting Plaintiff to this criminal prosecution.

Wherefore, Plaintiff Brian Towne prays for judgment in his favor and against Defendants Donnelly, the County of LaSalle, and the City of Ottawa on this claim and for an award of compensatory and punitive damages, costs, and any additional relief that is just and appropriate.

### Count V
### Illinois law
### Indemnification
### Defendants County of LaSalle and City of Ottawa

99. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

100. During the relevant time, Defendants Mueller, Vescogni, Kidder were employed as assistant state's attorneys with the LaSalle County State's Attorney's Office and acted within the scope of their employment.

101. Under 745 ILCS 10/9-102, County of LaSalle is required to indemnify all County employees for any judgment against them for acts or omissions done within the scope of their employment.

102. During the relevant time, Defendant Gualandri was employed as a law enforcement officer with the City of Ottawa police department and acted within the scope of his employment.

103. Under 745 ILCS 10/9-102, City of Ottawa is required to indemnify all City employees for any judgment against them for acts or omissions done within the scope of their employment.

Wherefore, Plaintiff Brian Towne prays for judgment in his favor and that County of LaSalle be required to indemnify any County employee found liable in this matter and pay any award of compensatory damages, attorneys' fees, and costs. Plaintiff Brian Towne further prays for judgment in his favor and that City of Ottawa be required to indemnify any City employee found liable in this matter and pay any award of compensatory damages, attorneys' fees, and costs.

### Jury Demand

Plaintiff Brian Towne demands a trial by jury.

Respectfully submitted,

*/s/ Shawn W. Barnett*
Attorney No. 6312312
sbarnett@halemonico.com
(312) 870-6905

Hale & Monico, LLC
53 West Jackson, Suite 337
Chicago, IL 60604
HaleMonico.com